IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAURICE WESTBROOK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No.  14-cv-1857-L-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Maurice Westbrook, seeks judicial review of a final adverse decision of

the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons

explained below, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that he is disabled due to a variety of ailments, including

diabetes mellitus, neuropathy, obesity, loss of right eye vision, chronic obstructive

pulmonary disease, and obstructive sleep apnea. After his applications for disability

insurance benefits and supplemental security income ("SSI") benefits were denied

initially and on reconsideration, Plaintiff requested a hearing before an administrative

law judge ("ALJ"). The hearings were held on April 3, July 25, and November 27, 2012.

The April 3, 2012 hearing was postponed due to weather. *See* Administrative Record

[Dkt. No. 11 ("Tr")] at 87. The July hearing was also postponed due to missing medical

records. *See id*. at 82. The hearing was finally held on November 27, 2012 when

1

Plaintiff was forty-nine years old. *See id.* at 28. Plaintiff is a high school graduate and has past work experience as a groundskeeper and janitor. Plaintiff has not engaged in substantial gainful activity since September 3, 2009. *See id.* at 12.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. *See id.* at 11. The medical evidence established that Plaintiff suffered from diabetes mellitus, neuropathy, obesity, loss of right eye vision, a history of chronic obstructive pulmonary disease, and obstructive sleep apnea. *See id.* at 12. The ALJ, citing the medical expert's testimony, concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 18-19. The ALJ further determined that Plaintiff had the residual functional capacity to perform sedentary exertion level work but could not return to his past relevant employment. *See id.* at 19. Relying on a vocational expert's ("VE") testimony, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. *See id.* at 28-29. Given his age, education, and exertional capacity for sedentary work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.* at 29.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff contends that the ALJ violated due process by denying his counsel the opportunity to cross-examine the testifying medical expert. *See* Dkt. No. 14 at 25.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or supplemental security income, a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the

4

> claimant's age, education, work experience, and residual functional
> capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's

substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

<u>Cross-Examination</u>

Dr. Kweli Amusa was the testifying medical expert ("ME") at Plaintiff's hearing. Dr. Amusa testified by telephone before Plaintiff gave his testimony. *See* Tr. at 43. Dr. Amusa affirmed that she had reviewed Plaintiff's medical records, which included statements that Plaintiff's legs swell and need elevation. *See id*. at 39, 325, 348, 351. Based on her review of Plaintiff's medical records, Dr. Amusa testified that Plaintiff has a "fairly severe impairment of diabetes that is complicated by peripheral neuropathy" and that his neuropathy causes him pain in his lower extremities and discomfort in his hands. *Id*. at 40. Dr. Amusa also mentioned Plaintiff's sleep apnea but noted that the record showed that this impairment was mitigated by Plaintiff's use of a prescribed CPAP device. *See id*. at 17, 40-41.

The ALJ then asked Plaintiff's counsel, Carl Weisbrod, if he had any questions for Dr. Amusa. *See id*. at 42 ("Do you have some questions, Mr. Weisbrod?"). Weisbrod asked Dr. Amusa if she understood the relationship between Plaintiff's obesity and

sleep apnea. *See id*. She responded that she did and reiterated that the record indicated that the CPAP machine was an effective remedy for his sleep apnea. *See id*. at 42-43. Weisbrod then began to ask Dr. Amusa hypothetical questions regarding Plaintiff's probable testimony. *See id*. at 43. The ALJ interrupted this line of questioning and instructed Weisbrod that he could not ask Dr. Amusa to assume what Plaintiff might testify to because he does not allow examinations by medical experts. *See id*. at 43-44. Weisbrod then asserted that he would defer his questioning until after Dr. Amusa heard Plaintiff's testimony. *See id*. at 44. The ALJ informed Weisbrod that he could not question Dr. Amusa after Plaintiff's testimony and invited him to ask additional questions at that present time. *See id*. The ALJ explained that he restricts medical expert testimony to the record and evidence and does not allow doctors "to conduct an examination ... based upon questions asked by attorneys or statements made by claimants at the hearing." *Id*. at 45. The ALJ then asked again if Weisbrod had "any additional questions to ask the doctor at [that] time." *Id*. Instead of responding to the ALJ's question, Weisbrod attempted to convince the ALJ to alter his restrictions by stating that Dr. Amusa had only reviewed clinical records. *See id*. The ALJ dismissed Dr. Amusa and instructed her to hang up. *See id*. After the ALJ instructed Dr. Amusa to hang up, Weisbrod asserted that he wanted to ask her more questions. *See id*. at 46. The ALJ responded that it was too late to pose further questions on the ME. *See id*. Weisbrod then asked the ALJ to recuse himself because he was not allowing him to present Plaintiff's testimony to Dr. Amusa "to find out if

she may be overlooking something." *Id*. Plaintiff does not base this appeal on the ALJ's refusal to recuse himself.

Plaintiff's testimony reiterated his prior statements in the medical record regarding leg swelling, a need for elevation, and pain in his lower extremities and hands. *See id*. at 54; Dkt. No. 14 at 21-22. Plaintiff also affirmed his medical record by testifying that he sleeps "well with the CPAP machine." Tr. at 54.

Plaintiff contends that the ALJ violated due process and social security procedures when he precluded Weisbrod's attempt to cross-examine Dr. Amusa. *See* Dkt. No. 14 at 18, 23, 25.

But Weisbrod was afforded the opportunity to cross-examine Dr. Amusa. Due process requires that a social security claimant be given the opportunity to cross-examine testifying experts. *See Tanner v. Sec'y of Health & Human Services*, 932 F.2d 1110, 1113 (5th Cir. 1991); *Satterfield v. Astrue*, 2:06-cv-0226, 2009 WL 3028645, at *8 (N.D. Tex. Sept. 22, 2009); *see also* SSR 13-1p (an ALJ's failure to allow cross-examination of witnesses is an abuse of discretion.). A cross-examination is "[t]he questioning of a witness at a ... hearing...." BLACK'S LAW DICTIONARY (10th ed. 2014). The November 27, 2012 hearing transcript reveals that the ALJ not only allowed Weisbrod to question Dr. Amusa but gave him at least three opportunities to do so. *See* Tr. at 42 ("Do you have some questions, Mr. Weisbrod?"), 44 ("If you have some additional questions, ask the doctor at this time."), 45 ("Do you have any additional questions to ask the doctor at this time?"). In fact, Weisbrod questioned Dr. Amusa about Plaintiff's sleep apnea. *See id*. at 42.

An ALJ may limit cross-examinations. Although Weisbrod had opportunities to cross-examine Dr. Amusa, Plaintiff contends that the ALJ violated due process and social security policy because he limited the types of questions that Weisbrod could ask and when the cross-examination could occur. *See* Dkt. No. 14 at 25; Dkt. No. 16. at 2. Specifically, Plaintiff complains that the ALJ prevented Weisbrod from asking hypothetical questions. *See* Dkt. No. 14 at 25; *see also* Tr. at 45.

While social security claimants must have an opportunity to cross-examine witnesses, there is no due process entitlement or policy that mandates how and when cross-examinations must occur. *See Mathews v. Eldridge,* 424 U.S. 319, 334 (1976) ("Due process is flexible and calls for such procedural protections as the particular situation demands."); *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (explaining that the opportunity for cross-examination is the "element of fundamental fairness of a hearing to which a claimant is entitled."). Courts in this circuit have allowed ALJs to limit the types of questions claimants may ask witnesses. *See Rouner v. Colvin*, Civ. A. H-13-2823, 2015 WL 1289794, at *14 (S.D. Tex. Mar. 20, 2015) (ALJ did not violate due process by limiting the questions that Plaintiff's attorney sought to ask the witness.). Also, the social security procedures outlined in the Hearings, Appeals, and Litigation Law Manual ("HALLEX") allow the ALJ to determine the subject and scope of cross-examinations. *See* HALLEX I 2-6-60, 1993 WL 751900, at * 1. The discretion that ALJs are afforded explain why the Court is not cited with any authority that specifically holds that an ALJ must allow hypothetical questioning in cross-examinations. *See, e.g.*, *Fluckey v. Chicago & Nw. Transp. Co.*, 838 F.2d 302, 303 (8th

10

Cir. 1988) (no abuse of discretion "in refusing to allow [hypothetical questions] in cross-examination").

Further, due process and social security regulations allow ALJs to limit when cross-examinations will occur. *See Mathews,* 424 U.S. at 334; 20 C.F.R. § 405.320(a) ("The administrative law judge will decide the order in which the evidence will be presented."). Weisbrod wanted to cross-examine Dr. Amusa after she heard Plaintiff's testimony so that she could confirm its plausibility and reasonableness. *See* Dkt. No. 14 at 24; Tr. at 45. The ALJ explained that Weisbrod could not take Dr. Amusa's cross-examination at that time because he does not allow MEs to conduct examinations "based upon ... statements made by claimants at the hearing." Tr. at 45. The ALJ's practice is consistent with HALLEX, which allows an ALJ to prevent a witness from listening to other testimony if it might affect their subsequent testimony, *see* HALLEX I-2-6-60, 1993 WL 751900, at *2, and forbids ALJs from allowing MEs to conduct examinations during the hearing, *see* HALLEX I 2-6-70, 1993 WL 751901 ("The ALJ will not ask or allow the ME to conduct any type of ... examination of the claimant during the hearing."). Consequently, the ALJ's cross-examination limitations did not violate Plaintiff's due process rights or social security procedure.

The ALJ's limitations also did not prevent corroboration. Plaintiff asserts that he was prevented "from obtaining corroborating testimony" because the ALJ did not allow Dr. Amusa to listen to his testimony. Dkt. No. 16 at 2. Plaintiff admits that his testimony echoed written statements in the medial record. *See* Dkt. No. 14 at 21-22; Tr. at 269, 280, 282, 313, 314, 316, 318, 325, 348, 350, 351, 353. The record reflects

11

that Dr. Amusa reviewed the medical record and was, therefore, already aware of the pertinent medical information Plaintiff testified about. *See* Tr. at 39-40. In fact, Dr. Amusa's testimony actually corroborated Plaintiff's testimony about his leg pain and CPAP device effectiveness. *See id.* at 40-43; Dkt. No. 14 at 9, 21-22. Dr. Amusa did not need to hear Plaintiff's testimony to corroborate parts of it.

Plaintiff also complains that the ALJ did not summarize his testimony for the ME. *See* Dkt. No. 14 at 25. HALLEX permits the ALJ to summarize pertinent testimony, such as claimant's current medications or sources and types of treatment, for the ME. *See* HALLEX I-2-6-70, 1993 WL 751901. But, on this record, because Dr. Amusa was already aware of this pertinent information, no summary was necessary.

Prejudice

Even if the ALJ's cross-examination limitations were in error, Plaintiff has not demonstrated that he was prejudiced. Plaintiff argues that the ALJ's limitations were a violation of his constitutional right to due process and presumptively harmful. *See* Dkt. No. 14 at 24. As explained above, due process does not guarantee the right to ask hypothetical questions or to cross-examine a witness at a requested time. *See Mathews,* 424 U.S. at 334. Accordingly, the ALJ's limitations were not violations of due process or presumptively harmful.

There is also no reasonable possibility of a different outcome. Plaintiff argues that "[h]ad Dr. Amusa heard [his] testimony ... [t]he ALJ could have ... added additional limitations – such as elevating his legs to relieve pain and swelling." Dkt. No. 14 at 24. But the record reflects that Dr. Amusa did not have to hear Plaintiff's

testimony about his need for leg elevation because this claim appeared in the record she reviewed. *See* Dkt. No. 14 at 12, 21; Tr. at 40, 581, 351**.** Plaintiff's testimony reiterated the statements that he made in the record and did not elicit any additional evidence for Dr. Amusa that might have led to a different decision. *See Ripley*, 67 F.3d at 557 n.22.

Plaintiff cites *Brown v. Comm'r, Soc. Sec. Admin,* 2014 WL 1233126 (E.D. Tex. Mar. 24, 2014), for the proposition that claimants are prejudiced whenever a ME is not present during the claimant's testimony. *See* Dkt. No. 16 at 3. But MEs are not required to attend the claimant's portion of the hearing. *See* HALLEX I-2-6-70, 1993 WL 751901; HALLEX I-2-6-60, 1993 WL 751900, at *2**.** And, as noted above, Plaintiff's testimony did not elicit additional information beyond what was presented in record that Dr. Amusa had reviewed before the hearing. The analysis in *Brown* is inapposite to establish prejudice here.

## Recommendation

The hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 28, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE